LeNore M. GILL, Plaintiff
and Appellant,

v.

Ruland J. GILL, Defendant
and Respondent.

No. 19142.

Supreme Court of Utah.

April 29, 1986.

Rehearing Denied May 29, 1986.

Gary L. Paxton, Salt Lake City, for plaintiff and appellant.

Dwight L. King, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

This appeal challenges the propriety of the district court's division of marital assets. Plaintiff contends that she was entitled to a proportionately larger share of the marital assets to compensate her for defendant's alleged dissipation of those assets during the pendency of the divorce action, in direct contravention of the court's injunction and restraining order.

Plaintiff brought this action for divorce in September 1979. The parties' marital assets consisted of a residence, an automobile, a pickup truck and camper, several horses, trailers, and related tack, various life insurance policies, guns, camping equipment, furniture, jewelry, personal items, an ongoing business known as Fleetway, Inc., and a defunct business known as Gill's Tire Market.

In October 1979, at plaintiff's instance and request and pursuant to stipulation, a restraining order was entered against defendant by which he was enjoined from encumbering or disposing of any marital property and any assets of Gill's Tire Market or Fleetway, Inc., without the express prior knowledge and approval of plaintiff or without first obtaining an appropriate court order. At the time the order was entered, defendant was operating both businesses and making his living therefrom. Plaintiff did not participate in the management of either of the businesses, and after the restraining order was entered, defendant continued to operate them.

In December 1979, plaintiff sought and obtained an order bifurcating the divorce issue. A decree of divorce was obtained in January 1980, reserving the issue of prop-

erty division for a subsequent proceeding. At the time the divorce decree was entered, defendant was continuing to operate the businesses known as Gill's Tire Market and Fleetway, Inc.

In October 1980, following the bankruptcy of Gill's Tire Market and after Fleetway, Inc., had also failed, defendant utilized the remaining assets to open a retail tire store, which he operated under the name of Tire City for approximately two years. Two months prior to trial, defendant sold the assets of Tire City for $15,000, a sum nearly equal to Tire City's indebtedness.

At trial, the focal issue was plaintiff's contention that defendant had intentionally secreted or disposed of marital assets to deprive plaintiff of her rightful share. The trial court specifically found that defendant had not hidden any of the assets of the marital estate and had not attempted to deprive plaintiff of her interest in those assets. The court then divided the assets on hand and awarded generally equal shares to each party. The court also ordered that the accounts receivable from the Fleetway Tire Market business be divided equally; that defendant pay the business debts and the marital debts incurred prior to separation; that any proceeds remaining from the business bankruptcy be divided equally; and that defendant pay all income tax obligations owing for the years 1977–1979.

The court limited its award of attorney fees to those incurred up to the time the decree of divorce was obtained in January 1980. The court made no award for fees incurred by plaintiff for the purpose of showing that defendant had intentionally dissipated the marital assets.

■ The long-recognized and oft-repeated standard of appellate review permits this Court to overturn the judgment of the trial court only when the evidence clearly preponderates to the contrary or the trial court has abused its discretion or

misapplied principles of law.[1] In adjusting the financial and property interests of parties to divorce, the trial court is afforded considerable discretion,[2] and its actions are cloaked with a presumption of validity.[3]

■ The record reflects that although Gill's Tire Market and Fleetway, Inc., were not prospering, the parties were dependent upon the operation of those businesses for their livelihood. It necessarily follows that at the time the court entered its order restraining the disposition of marital assets, it was within the contemplation of all concerned that defendant would continue to operate the businesses.

It was reasonable for the trial court to conclude that plaintiff was aware of defendant's business revenues and that plaintiff knew defendant had transferred the remaining assets of the defunct Fleetway, Inc., to the new business operated under the name of Tire City. This conclusion is supported by the fact that commencing in October 1979 and continuing to the time of trial, plaintiff engaged in extensive discovery proceedings seeking evidence concerning defendant's financial affairs and the businesses he continued to operate, specifically Tire City. Furthermore, no effort was made by plaintiff to restrain defendant from operating his businesses, and no citation for contempt was sought or obtained for any violation of the court's restraining order.

Trial of this case extended over a period of three days, and the record is replete with evidence that bears upon the property division issue. Not unexpectedly, most of the testimony was controverted, but a canvass of the record fails to disclose any evidence that clearly preponderates contrary to the findings of the trial court that defendant did not hide or secrete marital assets in violation of the court's order or the rights of plaintiff.

1. *Wiese v. Wiese,* Utah, 699 P.2d 700, 701 (1985).

2. *Argyle v. Argyle,* Utah, 688 P.2d 468, 470 (1984).

3. *Savage v. Savage,* Utah, 658 P.2d 1201, 1203 (1983).

Plaintiff's remaining contention on appeal is that the court abused its discretion in limiting the award of attorney fees. In substance and effect, the court concluded that the legal expense of conducting the extensive discovery proceedings engaged in by plaintiff was not reasonable and necessary.

In light of plaintiff's failure to demonstrate either by way of discovery or by evidence elicited at trial that defendant did in fact secrete or dissipate marital assets, the court did not abuse its discretion in not requiring defendant to assume and pay the additional fees plaintiff incurred.

The propriety of the court's limited award of attorney fees is further indicated by the relative ability of the parties to pay their respective attorneys for services rendered. Plaintiff was employed and earning approximately $12,000 per annum, and defendant was unemployed and without income from any source.

Affirmed. No costs awarded.

STEWART, J., concurs.

ZIMMERMAN, Justice (dissenting):

I dissent. The issue on appeal is whether the trial court erred when it found that Mr. Gill did not violate an injunction prohibiting him "from encumbering or disposing of in any manner whatsoever, any assets or properties of ... Gill's Tire Market, Inc., or Fleetway, Inc., without the *express, prior knowledge and approval* of [Mrs. Gill] or without first obtaining an appropriate court order after notice and application...." (Emphasis added.) There is no conflict in the evidence that at the time the injunction was entered, pursuant to Mr. Gill's stipulation, the marital estate included the business assets of Gill's Tire Market and Fleetway Tires, Inc. These assets were then worth approximately $50,000. By the time the marital estate was divided in December of 1982, the value of the business assets had diminished to approximately $6,000, primarily as a result of Mr. Gill's transfer of those assets into a new, but unsuccessful business, Tire City. That

transfer occurred without Mrs. Gill's "*express, prior knowledge*" and without any request to or order from the court, as required by the injunction.

Contrary to the suggestion in the majority opinion, resolution of the issue presented by this case does not turn upon whether Mrs. Gill proved that Mr. Gill intentionally hid assets belonging to the marital estate or upon whether Mr. Gill intentionally attempted to deprive Mrs. Gill of her interest in the business portion of the marital estate. In determining whether one is civilly liable for violating an injunction, the element of intent is irrelevant. *E.g., Rogers v. Pitt,* 89 F. 424, 429 (Cir.Ct.Nev.D.1898); *Weston v. John L. Roper Lumber Co.,* 158 N.C. 270, 73 S.E. 799, 800 (1912).

> The absence of willfulness does not relieve [an individual] from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.... Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.

*McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (citations omitted). The Utah courts have long recognized that civil contempt for violation of a court order or injunction requires no intent. *Gunnison Irrigation Co. v. Peterson,* 74 Utah 460, 464, 280 P. 715, 717 (1929).

Thus, the issue on appeal is simply whether Mr. Gill violated the plain terms of the injunction to Mrs. Gill's detriment. The terms of the injunction were clear. Its purpose was to preserve the marital estate against loss. Mr. Gill violated the injunction. Mrs. Gill clearly sustained damages as a result of that violation. The trial court acted contrary to the uncontradicted evidence when it refused to find the injunction had been violated and to compensate Mrs. Gill accordingly.

The majority seems to rely in part on the fact that prior to the trial on division of assets, Mrs. Gill failed to petition the trial

court to hold her former husband liable for contempt. Despite her failure to do so, however, the record establishes that she was diligent in her efforts to protect her interest in the assets. Beginning with the commencement of the divorce action in December of 1979, Mrs. Gill took steps to determine the nature and disposition of the business assets. Mr. Gill was dilatory and evasive in responding to her repeated discovery requests. His lack of candor forced Mrs. Gill to bring several motions to compel, a motion in supplemental proceedings, orders to show cause, and a motion for sanctions. As late as the second day of trial in December of 1982, Mr. Gill was producing documents relating to the status of the assets, and even then he did not comply fully with Mrs. Gill's earlier discovery requests. Many of the discovery responses ultimately supplied were inexcusably dificient. The majority's opinion allows Mr. Gill to benefit from his own dilatory and evasive tactics. Mrs. Gill should not be prejudiced for having proceeded, via means other than a contempt proceeding, to determine the value and disposition of her share of the assets.

I would also hold that the trial court clearly abused its discretion in limiting Mrs. Gill's attorney fees, especially because a significant portion of those fees resulted from her repeated attempts to force Mr. Gill to comply with legitimate discovery requests. It is certainly true, as the majority states, that we should defer to the trial court under appropriate circumstances. However, by affirming the unsupportable order of the trial court in this case, we are not deferring. Rather, we are abdicating our responsibility to see that orders reviewed by us are legally supportable, which the one involved in this case certainly is not.

HOWE, J., concurs in the dissenting opinion of ZIMMERMAN, J.

DURHAM, J., having disqualified herself, does not participate herein.